**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Christensen Forest Products, Inc.,

Plaintiffs,

v.

Potlatch Corporation,

Defendant.

Civil No. 02-753 (DWF/RLE)

**MEMORANDUM OPINION AND ORDER**

---

Michael T. Milligan, Esq., and Heidi N. Wolf, Esq., Quinlivan & Hughes, P.O. Box 1008, St. Cloud, MN 56302, counsel for Plaintiff.

Frank B. Yetka, Esq., Rudy Prevost Gassert & Yetka, 123 Avenue C, Cloquet, MN, counsel for Defendant.

---

## Introduction

The above-entitled matter came on for hearing before the undersigned United States District Judge on May 30, 2003, pursuant to cross motions for summary judgment and Plaintiff's Motion to Strike Undisclosed Evidence. In the Complaint, Plaintiff alleges breach of contract, fraud, misrepresentation, and promissory estoppel. For the reasons set forth below, Plaintiff's Motion for Summary Judgment is denied; Plaintiff's Motion to Strike is granted; and Defendant's Motion for Summary Judgment is granted in part.

## Background

Approximately 20 years ago, Plaintiff Christensen Forest Products, Inc., ("CFP") began supplying Defendant Potlatch Corporation ("Potlatch") with pre-cut lumber to use for pallets, crates, and skids. The lumber Potlatch required was unusual in size, and CFP agreed to cut and cure the lumber especially for Potlatch.

JUN 1 0 2003
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

The initial agreement between CFP and Potlatch was oral, but has since been supported by written purchase orders. According to CFP, Potlatch agreed that, in the event Potlatch should cease buying lumber from CFP, Potlatch would purchase all remaining stock of custom-cut lumber from CFP. The written purchase orders, however, stipulate that, under those circumstances, Potlatch would purchase three months worth of inventory.

In May of 2000, Potlatch began looking for ways to cut costs. According to Potlatch, in June of 2000, Potlatch informed CFP that Potlatch might place the lumber contract up for competitive bidding; CFP denies any such notice.

In November of 2000, Potlatch did issue a Request for Proposals ("RFP"). Three companies, including CFP, submitted proposals to provide Potlatch with lumber for crates, skids, and pallets. Potlatch accepted the bid of a company called Savanna. CFP asserts that Savanna was able to submit a lower bid because Savanna did not abide by the conditions set forth in the RFP; specifically, CFP asserts that Savanna's bid specified different measurements than the RFP called for.

In December of 2000, Potlatch, through its representative, Dick Erdman, notified CFP that the bid had been awarded to another company. Erdman requested that CFP provide Potlatch with an inventory of all lumber CFP held for Potlatch so that Potlatch could purchase it. CFP informed Potlatch that it was holding 3.7 million board feet of uncut lumber with a value of $1,751,230.[1] Potlatch asserts that in 1999 it purchased $1.41 million worth of lumber from CFP,

---

[1] CFP later asserted that this figure was low and that it held over $2 million worth of inventory for Potlatch.

and in 2000 it purchased $1.58 million worth of lumber. Thus, the inventory CFP was holding was more than a year's worth.

Erdman discussed the issue with other individuals at Potlatch, and they concluded that, while the agreement did not specify a set amount of inventory that should be purchased, it would be fair to purchase a three-month supply. Accordingly, Potlatch agreed to purchase finished product through April 13, 2001, and purchased a total of $470,000 worth of inventory.

CFP brought this action alleging that Potlatch breached its contract with CFP by refusing to purchase the remaining inventory CFP had maintained for Potlatch; that Potlatch is obligated to purchase that inventory pursuant to the doctrine of promissory estoppel; that Potlatch committed fraud and misrepresentation during the November 2000 bidding process; and that Potlatch committed fraud and misrepresentation when, in December of 2000, Erdman indicated that Potlatch intended to purchase the full inventory.

## Discussion

### 1. Standard of Review

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The court must view the evidence and the inferences which may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enterprise Bank v. Magna Bank of Missouri*, 92 F.3d 743, 747 (8th Cir. 1996). However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and

inexpensive determination of every action.'" Fed. R. Civ. P. 1. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enterprise Bank*, 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record which create a genuine issue for trial. *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Krenik*, 47 F.3d at 957.

**2. Motion to Strike**

At the outset, the Court addresses CFP's motion to strike. The motion relates to certain documents that Potlatch did not disclose during the discovery period. Potlatch asserts that both Potlatch and CFP learned of the existence of the documents during depositions of various Potlatch personnel, but, as a result of computer formatting issues, Potlatch was unable to retrieve the documents and reduce them to hardcopies before the close of discovery. Accordingly, Potlatch asserts that it should be allowed to produce the documents out of time.

The Court disagrees. While the Court recognizes the lengths Potlatch went to to obtain hardcopies of the documents and the difficulties it encountered in doing so, the Court also notes that Potlatch never sought an extension of the discovery period. By Potlatch's own assertion, Potlatch *knew* about the documents before the end of the discovery period, yet Potlatch made no effort to obtain an extension for purposes of retrieving the documents. The Court concludes that

there is no basis for relieving Potlatch of its duty to abide by the scheduling order, and the Court grants CFP's motion to strike.

The Court notes, however, that the Court's decision with respect to the motions for summary judgment is unaffected. With or without the documents that are the subject of the motion to strike, the Court's ruling on the remaining motions would be the same.

**3. Breach of Contract and Promissory Estoppel**

CFP asserts that, because the alleged oral contract was for custom goods, under Minnesota law the statute of frauds is not implicated. Specifically, in Minnesota, the statute of frauds is not a defense when the contract is for the custom manufacture of goods and notice of repudiation is not provided before production. *See* Minn. Stat. § 336.2-201(3); *Associated Lithographers v. Stay Wood Products, Inc.*, 279 N.W.2d 787, 791 (Minn. 1979). Oddly, Potlatch asserts that the statute of frauds is "especially" relevant because the agreement involved the sale of custom-produced goods. Potlatch seems to misapprehend the law and the import of the Minnesota statute at issue. However, there appears to be a question of fact, as to whether the lumber CFP has or had in stock is suitable for "general trade," so the application of Minn. Stat. § 336.2-201(3) remains unresolved.

Moreover, the record creates genuine issues of material fact with respect to whether there was a meeting of the minds sufficient to constitute a contract and, if so, what the terms of that contract are. Finally, assuming that there was a contract that was breached, there appears to be a genuine issue of material fact as to when Potlatch notified CFP of its intent to terminate the contract and the amount of inventory CFP had at that time, both issues which relate directly to the amount of damages and CFP's duty to mitigate.

Accordingly, the Court finds that neither party is entitled to summary judgment on CFP's breach of contract claim.

With respect to CFP's claim for promissory estoppel, Potlatch notes that such a claim is disfavored when a written contract exists. *See Norwest Bank Minn., N.A. v. Midwestern Mach. Co.*, 481 N.W.2d 875, 880 (Minn. Ct. App. 1982). Under these circumstances, however, there is some question as to whether there was a sufficient meeting of the minds at the outset of the parties' relationship to constitute a valid contract; accordingly, the issue of promissory estoppel should be maintained pending a determination on the existence of a contract.

**4. Fraud and Misrepresentation**

CFP's claims of fraud and misrepresentation are based on two "statements" by Potlatch: (1) the RFP and (2) the December 14, 2000, letter from Erdman. The Court finds that neither of these statements is actionable under the theories of fraud or misrepresentation.

First, with respect to the RFP, CFP's claim is premised upon the assumption that, if CFP had known that the bid requirements outlined in the RFP were elastic, CFP would have won the bid. In other words, CFP asserts that it would have won the contract but-for its adherence to the requirements of the RFP to which other bidders did not adhere. There are two flaws with this theory. First, there is no evidence in the record to indicate that CFP could have submitted a bid lower than that submitted by Savanna if CFP had bid the same materials. Second, and more importantly, because this was a private bidding process, Potlatch was not bound to award the bid to the lowest bidder; as a result, there is no way to prove any sort of causal nexus between CFP's misapprehension of the bid requirements and CFP's failure to win the contract.

With respect to the December 14, 2000, letter from Erdman, CFP faces a similar problem. Given that the alleged misrepresentation–that Potlatch would purchase all of CFP's inventory on hand–was made after CFP knew, in no uncertain terms, that its ongoing relationship with Potlatch was over, there is no way in which CFP could have relied upon that representation to generate more inventory. In other words, even if Erdman's letter contained a purposeful misrepresentation, there is no evidence that CFP did, or could have, relied upon that representation to their detriment.

Accordingly, the Court grants summary judgment in favor of Potlatch on CFP's claims of fraud and misrepresentation.

For the reasons stated, **IT IS HEREBY ORDERED:**

1. Plaintiff's Motion to Strike (Doc. No. 24) is **GRANTED**;

2. Plaintiff's Motion for Summary Judgment (Doc. No. 18) is **DENIED**; and

3. Defendant's Motion for Summary Judgment (Doc. No. 9) is **GRANTED IN PART** and **DENIED IN PART** as follows:

   a. Defendant's Motion for Summary Judgment is **GRANTED** as to Plaintiff's claims of fraud and misrepresentation and those **CLAIMS** are **DISMISSED WITH PREJUDICE**;

   b. Defendant's Motion for Summary Judgment is **DENIED** in all other respects.

Dated: June 10, 2003

DONOVAN W. FRANK
Judge of United States District Court